FILED

AUG 2 3 2007
23
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

NR

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

KEVIN THEIS, )
)
    Plaintiff, )
)
vs. )
)
JAMES D. MONTGOMERY & )
ASSOCIATES, LTD., JAMES D. )
MONTGOMERY & ASSOCIATES )
401(k) PLAN, JAMES D. MONTGOMERY )
& ASSOCIATES PROFIT SHARING PLAN, )
PAULINE MONTGOMERY, AND COCHRAN, )
CHERRY, GIVENS, SMITH & )
MONTGOMERY, P.C. )
)
    Defendants. )

07CV 4786
JUDGE GOTTSCHALL
MAGISTRATE JUDGE COLE

### COMPLAINT

Plaintiff Kevin Theis ("Mr. Theis"), by and through his attorneys, Peter M. Katsaros and

Mark A. Cisek of Hughes Socol Piers Resnick & Dym, Inc., and, pursuant to 29 U.S.C. §§1001, *et*

*seq.*; 29 U.S.C. §1132(a)(1)(B); 29 U.S.C. §1140; 29 U.S.C. §1024(b)(4); and 29 USC §1132(c)(1),

complains against Defendants James D. Montgomery & Associates, Ltd., James D. Montgomery &

Associates 401(k) Plan, James D. Montgomery & Associates Profit Sharing Plan, Pauline

Montgomery, and Cochran, Cherry, Givens, Smith & Montgomery, P.C. as follows:

### INTRODUCTION

1.    This is an action arising under the Employment Retirement Income Security Act of

1974, as amended, 29 U.S.C. §§1001, *et seq.* ("ERISA"), to recover benefits due to Mr. Theis under

an employee benefit plan, to recover for the bad faith failure to provide plan documents to Mr. Theis,

to recover for the harm done to Mr. Theis when he was discharged for exercising his rights under

ERISA, and to recover Mr. Theis' costs and attorneys' fees as provided by ERISA.

## PARTIES

2.     Plaintiff Kevin Theis is a resident of this district.  Mr. Theis was simultaneously an employee of both James D. Montgomery & Associates, Ltd. ("the Montgomery Firm") and of Cochran, Cherry, Givens, Smith & Montgomery, P.C. ("the Cochran Firm ").  On information and belief, Mr. Theis was and is a participant in either the James D. Montgomery & Associates 401(k) Plan or the James D. Montgomery & Associates Profit Sharing Plan (collectively hereinafter "The Plans"), or in both of them.  Mr. Theis is a participant under ERISA as that term is defined in 29 U.S.C. §1002, and has standing to bring this action under section 502(a) of ERISA, 29 U.S.C. §1132(a).

3.     Defendant James D. Montgomery & Associates 401(k) Plan and Defendant James D. Montgomery & Associates Profit Sharing Plan (collectively hereinafter "The Plans") are employee pension benefit plans as that term is defined in 29 U.S.C. §1002.

4.     Defendant James D. Montgomery & Associates, Ltd., at all times relevant hereto, was and is a corporation organized under the laws of the State of Illinois.  At all times relevant hereto, the Montgomery Firm was and is the "plan sponsor" of the Plans as that term is defined in 29 U.S.C. §1002(16), and a "fiduciary" of the Plans as that term is defined in 29 U.S.C. §1002(21).

5.     Defendant Pauline Montgomery ("Pauline ") is a resident of this district.  Pauline was and is an employee of James D. Montgomery & Associates, Ltd.  Pauline is also the Administrator of the Plans as that term is defined in 29 U.S.C. §1002(16), and a "fiduciary" of the Plans as that term is defined in 29 U.S.C. §1002(21).

6.     Defendant Cochran, Cherry, Givens, Smith & Montgomery, P.C. is a professional

2

corporation, whose website indicates that it is "located in Chicago, Illinois, [and] is the product of a merger between James D. Montgomery & Associates and the Cochran Law Firm." http://www.jamesdmontgomery.com/CM/Custom/TOCFirmOverview.asp.

## JURISDICTION AND VENUE

7.      This action arises under the Employee Retirement Income Security Act of 1974 as amended, 29 U.S.C. §§1001-1461 ("ERISA") and federal common law created and existing pursuant to ERISA.

8.      Jurisdiction over this action is based upon 29 U.S.C. §1132(e)(1) without regard to the amount in controversy or the citizenship of the parties, and 28 U.S.C. §1331 (federal question jurisdiction). The rights of the participants under the Plan, including Mr. Theis, are subject to civil enforcement pursuant to ERISA.

9.      Venue is proper in this Court pursuant 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1332(e)(2) because the Plans are administered in the Northern District of Illinois, the breaches of fiduciary duty took place in the Northern District of Illinois, and all of the Defendants reside or are physically located in the Northern District of Illinois.

## STATEMENT OF CLAIM

10.     At some point prior to May 1, 2004, the Montgomery Firm established and administered the Plans for the benefit of their employees including, but not limited to, Mr. Theis.

11.     Mr. Theis was hired by the Montgomery Firm and the Cochran Firm simultaneously on or about May 1, 2004. Mr. Theis was told upon his hire that he would become eligible to join the Montgomery Firm's 401(k) Plan after the completion of one year of employment. Furthermore, Mr. Theis was promised that, if the Montgomery Firm showed a profit, it would donate up to 3% of his

3

salary into the 401(k) Plan. Mr. Theis prepared a written summary of these terms at the time as they were offered to him by the Montgomery Firm, and he presented it to Pauline. Pauline orally affirmed that Mr. Theis' summary accurately reflected what he had been told by the Montgomery Firm. "Summary of 5/7/04 Meeting W/Pauline Montgomery" [sic], attached hereto as Exhibit 1.

12.    In the weeks leading up to Mr. Theis becoming eligible to join the Montgomery 401(k) Plan, he learned that none of the support staff of the Montgomery Firm participated in its 401(k) Plan. Moreover, none of the support staff had ever been invited to join the Montgomery Firm's 401(k) Plan; only the Firm's attorneys participated in the 401(k) Plan.

13.    On May 3, 2005, more than one year after Mr. Theis had started to work for the Montgomery Firm, Mr. Theis delivered an Anniversary Memo to Pauline requesting access to the Montgomery Firm's 401(k) Plan and requesting an annual review.

14.    On May 6, 2005, Mr. Theis asked Pauline if there was any paperwork that he needed to sign before he could participate in the 401(k) Plan. Pauline told Mr. Theis, "Keep your pants on." She further told Mr. Theis that he could not join the 401(k) Plan until he had his annual review, which he would receive the following week. This was the first time that Mr. Theis had been told that he would need an annual review before he was permitted to join the 401(k) Plan.

15.    Almost two weeks later, on May 16, 2005, Mr. Theis received a paycheck with no deductions taken for his participation in the 401(k) Plan. Mr. Theis again sent Pauline another memorandum asking for an opportunity to join the 401(k) Plan.

16.    On May 18, 2005, Mr. Theis asked for a copy of the Summary Plan Description in writing in another memorandum. May 18, 2005 Memo attached hereto as Exhibit 2. He was never given it. Instead, Mr. Theis was told on that day that he would not be allowed to enroll in the 401(k)

4

Plan until after his formal evaluation had been completed. Mr. Theis was later told by one of his superiors that he had completed his part of Mr. Theis' formal evaluation and returned the same to Pauline on May 17, 2005.

17.     Approximately three weeks later, Mr. Theis was allowed to enroll in the Montgomery Firm's 401(k) Plan. Deductions for Mr. Theis' contributions for the Plan began to be taken from his pay on or about June 30, 2005.

18.     For several months, Mr. Theis received no statements concerning his 401(k) account. Concerned, Mr. Theis logged into his 401(k) account through the Internet on November 30, 2005 to review the state of his account. The account only showed a balance of $112.50. This was far less money than Mr. Theis expected to be in his account given that $1,208.38, a sum reflecting several months of contributions, had been deducted from his pay.

19.     On November 30, 2005, Mr. Theis spoke to Pauline, the Plan Administrator, about the low balance in his 401(k) account. Pauline orally responded that there was a backlog in contributions, that Mr. Theis would get his money, and that the Montgomery Firm would contribute an additional $50.00 to make up for the delay.

20.     On December 30, 2005, the Montgomery Firm made contributions to Mr. Theis' 401(k) fund. Though deductions for Mr. Theis' 401(k) account were regularly taken from his paycheck thereafter, the Montgomery Firm failed to contribute to Mr. Theis' account again until May 2006.

21.     When Mr. Theis complained to Pauline about the failure of the Montgomery Firm to regularly submit the amounts that it was deducting from his paycheck to his 401(k) account, Pauline told him that sometimes the Montgomery Firm got backlogged, and that it made contributions when

5

it could.

22.     By the end of May 2006, Mr. Theis began to ask Pauline for an informational meeting concerning the Montgomery Firm's 401(k) be held in the near future. Because of this request, and Mr. Theis' other actions as detailed above, he began to be regarded by Pauline and other agents of the Montgomery Firm as an activist regarding the Montgomery Firm's 401(k) Plan.

23.     Between May 2006 and March 2007 the Montgomery Firm made untimely and sporadic contributions to Mr. Theis' 401(k) account. The last contribution that the Montgomery Firm made to Mr. Theis' account while he was employed there was March 13, 2007.

24.     Mr. Theis never received any reports from his 401(k) Plan informing him about the state of his account. He subsequently learned that those reports were not being sent to him as they should have been, but were instead being sent to and kept by Pauline.

25.     In May 2007, Mr. Theis made plans to take three days off of work. As he was required to do, Mr. Theis wrote to Pauline, who also served as the office manager, about the dates on which he intended to take off of work. Pauline approved those dates in writing to Mr. Theis. While Mr. Theis was on vacation, Pauline scheduled an impromptu 401(k) meeting for a date during the short time that Mr. Theis would be out of the office.

26.     After Mr. Theis returned to work, he was told by others in the office who were aware of his interest in the Montgomery Firm's 401(k) Plan that Pauline had both scheduled and held a 401(k) meeting while he was on vacation. Mr. Theis confronted Pauline about her scheduling of the meeting at a date and time when she knew that he would be out of the office. Pauline responded that Mr. Theis should be unconcerned because the meeting was only being held to give people an opportunity to sign up for the 401(k) Plan.

6

27.     Mr. Theis subsequently learned that Pauline's assurances about the 401(k) meeting merely being a chance for employees to sign up for the Plan were false. The people present for the meeting had been permitted to ask questions about the Plan, and were told that the Montgomery Firm had, in the past, contributed up to 3% of an employee's salary into his or her 401(k) account in years that the Montgomery Firm was profitable. Upon information and belief, the Montgomery Firm has never contributed this amount to Mr. Theis' 401(k) account despite having very profitable years while he was participating in the 401(k) Plan.

**Mr. Theis is Fired Under a Pretext**

28.     On July 17, 2007, Mr. Theis was very ill. Though Mr. Theis had been given a number of sick days as an employment benefit, and though he still had several sick days available to take, Mr. Theis went into work anyway.

29.     By late morning, Mr. Theis believed that, because he was sick, he might not be able to work the full day. Since Pauline was not in the office at the time, Mr. Theis explained his situation to the deputy office manager, and reminded her that he had still had sick days available to take. She told Mr. Theis that he could leave work if he needed to.

30.     By early afternoon, Mr. Theis felt too sick to keep working. Mr. Theis told the deputy office manager that he was going home to rest and was taking the rest of day off as a sick day. Now, however, the deputy office manager told Mr. Theis that he could not leave the office, and that if he felt too sick to keep working he should go lay down in one of the Firm's empty offices for a while. The deputy office manager never identified anything that had changed to account for why she initially told him that he could go home sick, and her subsequent decision that he could not leave. Upon information and belief, the deputy office manager's initial decision to let Mr. Theis take a sick

7

day was the result of her own judgment in assessing the situation, while her subsequent decision not to let Mr. Theis leave was the result of being subsequently told by others in the Montgomery Firm not to let Mr. Theis leave. Upon further information and belief, the motivation to not allow Mr. Theis to leave was to foment an incident that could serve as a pretext for Mr. Theis' dismissal - a dismissal that was really inspired by his activism concerning his 401(k) account rights.

31.     After attempting to keep working, Mr. Theis concluded that he was too sick to continue. He informed the office staff that he was taking a sick day, following the appropriate procedure for doing so, and he went home.

32.     The next day the Montgomery Firm and the Cochran Firm fired Mr. Theis for "insubordination" for taking a sick day when he had been told to stay at the office and work when ill. This proffered reason was not the real reason that Mr. Theis was fired. Rather it was a pretext that the Montgomery Firm and the Cochran Firm used to retaliate against Mr. Theis for advancing his rights under ERISA.

33.     Two days after Mr. Theis was fired, the Montgomery Firm made another untimely bulk contribution to Mr. Theis' 401(k) account.

**COUNT I**
**Benefits Claim**
**29 U.S.C.§1132(a)(1)(B)**
(Against James D. Montgomery & Associates, Ltd., James D. Montgomery
& Associates 401(k) Plan, James D. Montgomery & Associates Profit Sharing Plan)

34.     Plaintiff Kevin Theis realleges and incorporates by reference paragraphs 1 through 33 of his Complaint against the Defendants James D. Montgomery & Associates, Ltd., James D. Montgomery & Associates 401(k) Plan, James D. Montgomery & Associates Profit Sharing Plan (hereinafter collectively "Defendants" in Count I only) as if fully restated herein.

8

35.     The pertinent Code of Federal Regulations provides in relevant part that amounts withheld from Mr. Theis' paychecks for contribution into his 401(k) Plan account must be contributed to the Plan on the earliest date on which such contributions can reasonably be segregated from the employer's general assets, but in no event more than fifteen business days of the month in which Mr. Theis' contribution to the 401(k) Plan would have otherwise been payable to him in cash. 29 CFR §2510.3-102(a) and (b)(1).

36.     As noted above, Defendants failed to contribute in a timely manner to the 401(k) Plan all the amounts that they had deducted from Mr. Theis' pay for that purpose. Upon information and belief, Defendants retained these sums for such excessive amounts of time to maximize the interest accruing to themselves.

37.     By reason of the conduct described above, Defendants failed to provide Mr. Theis with all of the benefits and earnings to which he was entitled to under the Plan.

38.     By reason of the foregoing, Mr. Theis has been and continues to be damaged in that he has failed to receive the full benefit of the contributions taken from his pay to be applied to his 401(k) account. Specifically, he has lost most of the investment earnings for the amount of money that he would have received. Furthermore, while Defendants have made some of the contributions to the 401(k) Fund which they were in arrears on, they still have not paid into Mr. Theis' 401(k) Fund all of the amounts which Mr. Theis is owed.

39.     James D. Montgomery & Associates, Ltd. is a proper defendant here because the unity of both interest and management between the Montgomery Firm and the Plans which it sponsors is so great that there is no material difference between them.

40.     The Montgomery Firm sponsors two ERISA plans: the James D. Montgomery &

9

Associates 401(k) Plan and the James D. Montgomery & Associates Profit Sharing Plan. Through the intentional actions of these three defendants, including but not limited to improperly refusing to give Mr. Theis access to the Summary Plan Description and forwarding information about his account away from him and to Pauline, Mr. Theis has no way of knowing which of these two plans (or perhaps both of them) is the ERISA Plan responsible for his 401(k) account. Because this confusion is the result of the intentional and calculated acts of these three defendants, all three are appropriate defendants in this matter.

41.     Mr. Theis was not required to appeal his loss of benefits. Any such appeal would have been futile. Any such appeal undertaken by Mr. Theis concerning contributions to his 401(k) Plan would have been decided by the Plan Administrator, Pauline, who is the same individual who was responsible, in whole or in part, for the improper decisions that he would have appealed. Furthermore, Mr. Theis lacked meaningful access to review procedures as he had been improperly denied access to any Plan documents by Pauline and the Defendants. Thus, Mr. Theis had no way of knowing the procedure (if any exists) by which he could appeal the actions complained of here.

42.     Because of the actions and inactions of Defendants James D. Montgomery & Associates, Ltd., James D. Montgomery & Associates 401(k) Plan, James D. Montgomery & Associates Profit Sharing Plan, Mr. Theis has suffered in excess of $128,000.00 in losses stemming from the time value of money, the loss of the gain in buying stocks at a date before their value rose, and a failure to have all the amounts that were deducted from his check contributed to his 401(k) account.

43.     As a further direct and proximate result of Defendants' retaliatory discharge of Mr. Theis as described above, Mr. Theis has been compelled to retain the services of counsel in an effort

10

to enforce his rights, and has thereby incurred and will continue to incur legal fees and costs, the full nature and extent of which are not yet known. Therefore, Mr. Theis requests that attorney's fees and costs be awarded to him pursuant to 29 U.S.C. §1132(g)(1).

**WHEREFORE**, Plaintiff Kevin Theis requests the Court to declare that he is entitled:

a.  Pursuant to section 502(a) of ERISA, 29 U.S.C.§1132(a)(1)(B), to recover benefits due to him under the terms of the Plan;

b.  Pursuant to section 502(a) of ERISA, 29 U.S.C. §1132(a)(1)(B), to enforcement of his rights under the terms of the Plan;

c.  To his attorneys' fees and costs in pursuing this action;

d.  To prejudgment interest; and

e.  To such other and further relief as this Court deems just.

**COUNT II**
**Failure to Provide Plaintiff the Summary Plan**
**Description in Response to a Written Request**
**29 U.S.C.§1132(c)**
(against Pauline Montgomery)

34.  Plaintiff Kevin Theis realleges and incorporates by reference paragraphs 1 through 33 of his Complaint against Defendant Pauline Montgomery as if fully restated herein.

35.  Defendant Pauline Montgomery, at all times relevant hereto, was and is the Administrator of the Plans. Therefore, she is a fiduciary, as that term is defined in 29 U.S.C. §1102(21), of the 401(k) Plan in which Mr. Theis participates.

36.  Mr. Theis made a written request to Pauline for Summary Plan Description on May 18, 2005. Mr. Theis subsequently followed up this request with an oral request for the Summary Plan Description in May 2006, and with an additional written request on July 23, 2007 through his counsel. Pauline failed to provide the requested document in response to any of the requests, and

11

Mr. Theis still has never received or seen a copy of this document.

37.     Pauline's refusal to present a copy of the Summary Plan Description to Mr. Theis was intended to prevent Mr. Theis from knowing his rights under the 401(k) Plan in which he participated, or from even knowing in which Montgomery Firm sponsored Plan he was participating. In so doing, Pauline intended to hinder Mr. Theis in any attempt to vindicate his ERISA rights. Accordingly, Pauline actively concealed the benefit plan from Mr. Theis, and thus her actions constituted bad faith.

38.     As a further direct and proximate result of Pauline's refusal to present a copy of the 401(k) Plan documents as described above, Mr. Theis has been compelled to retain the services of counsel to enforce his rights, and has thereby incurred and will continue to incur legal fees and costs, the full nature and extent of which are not yet known. Therefore, Mr. Theis requests that attorney's fees and costs be awarded to him pursuant to 29 U.S.C. §1132(g)(1).

**WHEREFORE,** Plaintiff Kevin Theis requests the Court to declare that he is entitled:

a.      To in excess of $80,000.00 in fines paid by Pauline Montgomery pursuant to U.S.C. §1132(c)(1).

b.      To his attorneys' fees and costs in pursuing this action;

c.      To prejudgment interest; and

d.      To such other and further relief as this Court deems just.

**COUNT III**
**Interference With Protected Rights: Retaliatory Firing**
**29 U.S.C. §1140**
(against James D. Montgomery & Associates, Ltd. and
Cochran, Cherry, Givens, Smith & Montgomery, P.C.)

34.     Plaintiff Kevin Theis realleges and incorporates by reference paragraphs 1 through

12

33 of his Complaint against Defendants James D. Montgomery & Associates, Ltd. and Cochran, Cherry, Givens, Smith & Montgomery, P.C. (in Count III only, hereinafter collectively "Defendants").

35.　　Mr. Theis is a participant, as that term is defined in 29 U.S.C. §1002(7), in either the James D. Montgomery & Associates 401(k) Plan or the James D. Montgomery & Associates Profit Sharing Plan, or both of them. As such, Mr. Theis belongs to a protected class of individuals who cannot be retaliated against by his employers for exercising or seeking to exercise his rights under ERISA.

36.　　Mr. Theis was qualified for the job position that he held with Defendants in that he was hired for that job by Defendants, and retained that job for years with Defendants' approval.

37.　　Mr. Theis was discharged under circumstances that provide a basis to believe that he was fired from his employment with Defendants because they sought to retaliate against him for his attempts to exercise his rights under ERISA including, *inter alia*, repeatedly asking that the Montgomery Firm make contributions to his 401(k) account in a timely fashion, asking Pauline for the Summary Plan Description, and asking for an informational meeting be held concerning the 401(k) Plan. The circumstances include, but are not limited to, an awareness by both management of the Defendants and Pauline about Mr. Theis' concern about these issues concerning his 401(k) account, and the pretextual nature of Mr. Theis' firing from Defendants' employment. Specifically, Defendants told Mr. Theis that he was fired for leaving the office while too sick to work, though he had sick time accumulated which he was entitled to use for that purpose, and though he had initially been told by the deputy office manager that he would be able to go home if he became too sick to continue working.

13

38.     As a direct and proximate result of Defendants' actions in terminating Mr. Theis, Mr. Theis has suffered and will continue to suffer damages, including but not limited to, lost wages, lost benefits, loss of advancement opportunity, and loss of other compensation.

39.     As a further direct and proximate result of Defendants' retaliatory discharge of Mr. Theis as described above, Mr. Theis has been compelled to retain the services of counsel in an effort to enforce his rights, and has thereby incurred and will continue to incur legal fees and costs, the full nature and extent of which are not yet known. Therefore, Mr. Theis requests that attorney's fees and costs be awarded to him pursuant to 29 U.S.C. §1132(g)(1).

**WHEREFORE**, Plaintiff Kevin Theis requests the Court to declare that he is entitled:

a.      To judgment in his favor and against Defendants James D. Montgomery & Associates, Ltd. and Cochran, Cherry, Givens, Smith & Montgomery, P.C. in an amount sufficient to compensate him for his losses and damages, including but not limited to past and future income and benefits, and other compensatory damages;

b.      To his attorneys' fees and costs in pursuing this action;

c.      To prejudgment interest; and

d.      To such other and further relief as this Court deems just.

Respectfully submitted,

Peter M. Katsaros, One of the Attorneys for Plaintiff
Kevin Theis

14

Mark A. Cisek, One of the Attorneys for Plaintiff
Kevin Theis

Dated: August 23, 2007

Peter M. Katsaros
Mark A. Cisek
HUGHES SOCOL PIERS RESNICK & DYM, LTD.
Three First National Plaza
70 West Madison Street, Suite 4000
Chicago, Illinois 60602
(312) 580-0100

S:\WD\LIT\9709\15827\00121271.WPD

15

**INDEX OF EXHIBITS**

1.     "Summary of 5/7/04 Meeting W/Pauline Montgomery" [*sic*]; and

2.     May 18, 2005 Memorandum.

Exhibit One (1)

# EXHIBIT 1

## SUMMARY OF 5/7/04 MEETING W/PAULINE MONTGOMERY

Kevin Theis official hire date: 5/1/04 (first working day- 5/3/04)

Salary:     $45,000 per year ($1875.00 per pay period)

Holidays:   New Year's Day
            Martin Luther King Day
            Memorial Day
            July 4th
            Labor Day
            Veterans Day
            Thanksgiving
            Day After Thanksgiving
            Christmas
            (Possible 2 additional "floating" holidays- not guaranteed)

Each employee receives 8 sick days per year (prorated).

Employees begin accruing vacation time at the rate of one week per year (1st year) and two weeks per year (2nd year).   At the end of twelve months, the employee can take up to five working days paid vacation (though some of this may be taken prior to the anniversary date).  At the end of two years, the employee can take up to ten days paid vacation.

Employees become eligible for the 401(k) plan at the completion of one year.  If the firm shows a profit, the firm will donate up to 3% (three percent) of the employee's salary into the 401(k) plan.  The employee has the option of having up to as much of his/her salary as they desire deducted from checks and deposited into this account.

The firm will provide the employee with health insurance.  The employee must pay for additional health insurance for spouses and dependents.



**PLAINTIFF'S EXHIBIT**
1

Exhibit two (2)

# EXHIBIT 2

## MEMORANDUM

To:     Mrs. Pauline Montgomery

From:   Kevin Theis

Dated:  May 18, 2005

Re:     Our Meeting

This is to memorialize the conversation we had earlier today during a brief meeting in your office.

You informed me, quite forcefully, that I was not being patient in awaiting my enrollment in the 401(k) plan (despite my having requested enrollment over two weeks ago) and further informed me that you had given Mark Parts and Trent McCain evaluation forms to fill out in order to prepare for my annual review. You indicated that you were not going to enroll me in the 401(k) plan until the review process had been completed. (I have since learned that both Mark and Trent have returned these reviews to you.)

I stated that the delay in enrolling me in this program was hurting me financially and that I had wanted to begin my pre-tax contributions to the plan during the last pay period. Instead, the money was paid to me and was taxed, costing me money. You indicated that I could later "double up" on my contributions to make up for this lost money. I said that I preferred not to do that. You said that enrolling me in the plan would necessitate your getting Mr. Samuel Asch, who is somehow involved in facilitating the plan, to come down to the office personally to deliver the forms and that you did not have them. I offered to obtain them myself. You abruptly ended the meeting.

Two things: I am officially asking, for what I believe is the third time, to be enrolled in the 401(k) plan. Nothing in our original agreement indicated that my enrollment was predicated on an annual review. I am asking for nothing more than I was promised when I was originally hired.

Second, I am also officially asking for a copy of the firm's Summary Plan Description or SPD as I am interested in discovering how the plan is devised and run and what the terms of eligibility are.

I am not attempting to be difficult. I am simply requesting what I was promised when I was first employed with this firm.

Sincerely-

Kevin



PLAINTIFF'S
EXHIBIT
2